## SOWELL *v.* FEDERAL RESERVE BANK OF DALLAS, TEXAS.

### ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 367. Argued May 1, 1925.—Decided May 25, 1925.

1. An action brought on a promissory note by a federal reserve bank, a federal corporation, is an action " arising under the laws of the United States," within the meaning of Jud. Code § 24, " First " (a). P. 453.

2. A federal reserve bank is not a national bank, subject to the provisions of Jud. Code § 24, " Sixteenth." *Id.*

3. The Assignee Clause, Jud. Code § 24, " First " (a), which forbids the District Court to take cognizance of an action on a chose in action by an assignee which could not have been prosecuted in that court if no assignment had been made, applies where the sole ground of jurisdiction is diversity of citizenship, but not where the ground is that the action arises under the laws of the United States. *Id.*

4. Failure to present a promissory note for payment at the payee bank, where it was payable and where the maker had sufficient funds, or to give notice of dishonor, *held* not a defense to an action against the maker by the endorsee holder, in view of provision in the note waiving " protest, notice thereof and diligence in collecting," and the Negotiable Instruments Law in Texas, giving effect to such provisions. P. 456.

5. A note made to the order of a bank in which the maker had a deposit was endorsed by the payee to another bank as partial security for a larger indebtedness owed by the first bank to the second. The payee bank became insolvent and the endorsee sued the maker on the note. *Held* that the maker was not entitled, merely in virtue of his equitable right of set-off as against the payee, to have the action stayed until the endorsee had exhausted other collateral held by it as security for the debt owed it by the payee—at all events, not in the absence of the payee as a party. *Id.*

294 Fed. 798, affirmed.

ERROR to a judgment of the Circuit Court of Appeals affirming a judgment recovered in the District Court by

the Bank in an action against Sowell on his promissory note.

Mr. *James D. Williamson,* for plaintiff in error.

The assignee clause is a limitation upon the jurisdiction of the federal courts. Were this not so, the clause would be meaningless and ineffective. Any national bank of a foreign State could file suit as the assignee in the federal courts. The purpose of the clause would be defeated and, as Justice Story says in *United States v. Green,* 4 Mason 427, the door opened for fraud.

As an original proposition, the Federal Reserve Bank at Dallas had no cause of action against the defendant Sowell; there was no suit arising under the Constitution and laws of the United States. It is only by virtue of being assignee that it comes in and says a federal question is presented.

*Kolze v. Hoadley,* 200 U. S., 76, lays down the rule very broadly that under the Act of 1888, where the suit, no matter in what guise it shall be presented, is a suit to recover upon a promissory note or other chose in action by an assignee, the District Court has no jurisdiction unless the suit might have been prosecuted in such court to recover on the note if no assignment or transfer had been made. The Court further says that the bill or other pleading must contain an averment showing the suit could have been maintained by the assignor if no assignment had been made. *United States National Bank v. McNair,* 56 Fed. 323; *Parker v. Ormsby,* 141 U. S. 81. *Federal Reserve Bank v. Webster,* 287 Fed. 579, is not supported by authority. *Weyman v. Wallace,* 201 U. S. 230, distinguished. See *Houck v. Bank of Brinkley,* 242 Fed. 882; Act of January 28, 1915, 38 Stat., 803; *Bankers Trust Co. v. Texas Pacific Railroad,* 241 U. S. 295.

How can it be said that a suit on a promissory note as against the maker is one arising under the laws and

Constitution of the United States, when Congress has repeatedly said that the assignee of such note cannot sue thereon unless the assignor could have maintained his suit in the federal court? Is the language of the Act of 1915 as to jurisdiction more restrictive than the language of the assignee proviso of the Act of 1888, which is now a part of § 24 of the Judicial Code?

If jurisdiction exists in this case why not in favor of any national bank of a foreign state which, as an assignee, sues in the federal court, on a note assigned to it by a citizen of the same State as the maker? The laws of the United States are just as much in controversy as in this suit. The national bank is organized under the laws of the United States. None of the provisions of its charter or its national incorporation are taken away by the proviso of 1882 that, for jurisdictional purposes, it shall be considered as a citizen of the state in which it is domiciled. It is still a federal corporation. See cases above cited and *Petrie* v. *Commercial National Bank,* 142 U. S. 644; *Leather Manufacturers' National Bank* v. *Cooper,* 120 U. S. 778. In *Commercial National Bank* v. *Simmons,* 6 Fed. Cas. 226, jurisdiction was expressly conferred under the Act of February 25, 1863, and in *United States* v. *Planters' Bank,* 9 Wheat. 904, by the Act under which the bank was organized.

The Federal Reserve Act, § 4, provides: " It [a federal reserve bank] shall have the power to sue and be sued, complain and defend in any court of law or equity." This does not confer jurisdiction on the federal court of suits by or against that bank, but leaves § 24 of the Judicial Code in full force and effect as to all of its provisions; and, for jurisdictional purposes, it cannot invoke its federal charter in violation of the assignee clause.

Under the Negotiable Instruments Law, where a note is payable at a bank, it is the duty of the holder to present it at the bank in due course of business for payment.

Where the holder of a negotiable note, payable at a bank which is, under the Negotiable Instruments Act, authorized to charge the note to the account of the maker, knows of the impairment of the financial condition of such bank, the holder is negligent in failing to notify the maker that his note is not paid, or to present the note to the maker for payment. If the maker be damaged on account of the negligence, he is relieved from liability.

*Mr. Ethan B. Stroud, Jr.,* with whom *Messrs. Charles C. Huff* and *Joseph Manson McCormick* were on the brief, for defendant in error.

MR. JUSTICE STONE delivered the opinion of the Court.

Writ of error to the United States Circuit Court of Appeals for the Fifth Circuit to review its judgment, affirming a judgment for the plaintiff below of the District Court of the United States for the Northern District of Texas, in an action upon a promissory note.

Plaintiff in error, defendant below, a resident of Texas, executed his promissory note payable to the order of a national bank domiciled in Texas. The note was endorsed, before maturity, to defendant in error, also domiciled in Texas, as collateral security for an indebtedness owing by endorser to defendant in error, in excess of the amount of the note. Three principal grounds of error are assigned: (1) That the District Court was without jurisdiction as the plaintiff below was an endorsee of the note sued upon and as its endorser could not have brought suit upon the note against the maker in that court (Judicial Code, § 24, Subdivision First (c)); (2) that defendant in error as holder of the note failed to present the note for payment at the endorser bank where it was payable and where the maker had funds on deposit sufficient to pay it; (3) that the District Court refused to stay the suit until such time as the defendant should ex-

haust other collateral held by it as security for the indebtedness of the endorser.

Suit being brought by a federal reserve bank, incorporated under the laws of the United States, it is a suit arising under the laws of the United States (Judicial Code, § 24, First (a)). American Bank & Trust Co. v. Federal Reserve Bank of Atlanta, 256 U. S. 350. And as the defendant in error is not a national bank subject to the provisions of the Judicial Code, § 24, Subdivision Sixteenth, the District Court had jurisdiction of the suit unless jurisdiction is excluded by the so-called "Assignee Clause", Judicial Code, § 24, Subdivision First (c), which reads as follows:

" No District Court shall have cognizance of any suit (except upon foreign bills of exchange) to recover upon any promissory note or other chose in action in favor of any assignee, or of any subsequent holder if such instrument be payable to bearer and be not made by any corporation, unless such suit might have been prosecuted in such court to recover upon said note or other chose in action if no assignment had been made, . . ."

It is unquestioned that where the sole ground of jurisdiction is diversity of citizenship, such jurisdiction is excluded by the operation of this clause, and the question now presented is whether the clause has a like effect where the sole ground of jurisdiction is that the suit arises under the laws of the United States.

No inference as to the meaning of the assignee clause can be drawn from its relative position in § 24, and that of the clause giving jurisdiction of suits arising under the laws of the United States. Judicial Code, § 295.

The history of the clause, however, shows clearly that its purpose and effect, at the time of its enactment, were to prevent the conferring of jurisdiction on the federal courts, on grounds of diversity of citizenship, by assignment, in cases where it would not otherwise exist, and

not to deprive the federal courts of jurisdiction where it was conferred on grounds other than diversity of citizenship.

The assignee clause was incorporated in the Judiciary Act of 1789, § 11, in substantially its present form. Under that Act, jurisdiction could be invoked only by the United States, aliens, and in cases of diversity of citizenship. There was, therefore, no scope for its application in cases where jurisdiction depended upon the subject matter of the suit. Jurisdiction in cases arising under the laws of the United States (except for a brief period under the Act of February 13, 1801, 2 Stat. 92, 93) was not conferred until the Act of March 3, 1875, 18 Stat. 3, 470. Before that date jurisdiction over suits brought by federal corporations was denied unless their charters expressly authorized them to sue in the federal courts. Where such authority was granted, the assignee clause was held to be inapplicable and not to defeat the jurisdiction. *Commercial National Bank* v. *Simmons*, 6 Fed. Cas. 226, No. 3,062; *Bank of United States* v. *Planters Bank of Georgia,* 9 Wheat. 904. In that case, the court, in holding that the Bank of the United States might bring suit on a note endorsed to it by a citizen of the same State as that of the defendant maker of the note, pointed out that the purpose of the assignee clause was to prevent extending the jurisdiction of the court by the mere process of assignment and not to limit a jurisdiction conferred on other grounds. The Court said, at page 909:

"It was apprehended that bonds and notes, given in the usual course of business, by citizens of the same State, to each other, might be assigned to the citizens of another State, and thus render the maker liable to a suit in the federal Courts. To remove this inconvenience, the act which gives jurisdiction to the Courts of the Union over suits brought in by citizens of one State against the citizens of another, restrains that jurisdiction, where the suit is

brought by an assignee to cases where the suit might have been sustained, had no assignment been made. But the bank does not sue in virtue of any right conferred by the Judiciary Act, but in virtue of the right conferred by its charter. It does not sue, because the defendant is a citizen of a different State from any of its members, but because its charter confers upon it the right of suing its debtors in a Circuit Court of the United States."

Mr. Justice Story applied the same rule in the case of a claim assigned to the United States, holding that the assignee clause was not applicable, (*United States* v. *Green,* 4 Mason 426,) resting his decision both on the meaning and effect of the assignee clause, and on the effect of the Act of 1815, Chap. 253, conferring general jurisdiction on the federal courts over suits brought by the United States.

By the Act of 1875, 18 Stat. 336, jurisdiction of the federal courts was extended generally to all suits arising under the laws of the United States. Where such is the ground of jurisdiction, the assignee clause appears to us to be inapplicable, just as it had been held to be in cases in which the like jurisdiction was conferred by special corporate charter provisions or where jurisdiction was given generally over suits brought by the United States.

The precise question seems not to have been expressly passed upon by this Court since the Act of 1875. It, however, was necessarily involved in *Wyman* v. *Wallace,* 201 U. S. 230, in which the assignee clause would have defeated the jurisdiction attaching because of diversity of citizenship, but in which the jurisdiction was, nevertheless, upheld because the case was one arising under a law of the United States.

We think that a reasonable interpretation of the language of the clause in the light of its history, its obvious purpose at the time of its enactment, and judicial declarations as to its meaning and effect, and the fact that the provision for jurisdiction generally over suits arising under

the laws of the United States was enacted later, and without any exceptions, lead to the conclusion that it should be so applied as not to limit jurisdiction arising from the nature of the subject matter of the suit, as is the case in suits brought by or against corporations organized under the laws of the United States. *American Bank and Trust Co.* v. *Federal Reserve Bank, supra,* p. 356. We hold that the District Court had jurisdiction over the cause.

The note sued on contained a provision that the maker waived " protest, notice thereof and diligence in collecting." The Negotiable Instruments Law in force in Texas gives effect to stipulations waiving presentment, protest or notice of dishonor, contained in the body of the instrument, and provides that they are binding on all parties to it. (Revised Statutes, Texas, § 82, Art. 6001–a(3), 109, 110, 111.) Plaintiff in error was, therefore, bound by his waiver and the circumstance that defendant in error had knowledge of a deposit of the plaintiff in error with the payee bank sufficient to meet the note at maturity, did not, contrary to the express terms of the waiver, impose a duty on defendant in error to present the note for payment. Defendant's rights were unimpaired by its failure to make due presentation of the note or to give notice of its dishonor.

The contention of plaintiff in error that suit should have been stayed until defendant in error had exhausted its other collateral, is not founded upon any special equities growing out of fraud, agreement among the parties, or suretyship, or other special relationship, giving rise to any equity in the maker of the note. The note was held by defendant in error, together with other collateral, as security for the debt of the payee who is insolvent and indebted to plaintiff in error in an amount exceeding the note. In such a situation there is no scope for the marshalling of the security at the behest of the maker of the note. The equitable doctrine of marshalling

rests upon the principle that a creditor having two funds to satisfy his debt, may not by his application of them to his demand, defeat another creditor, who may resort to only one of the funds. The debtor may not ordinarily invoke the doctrine, for by doing so he would disregard the express provisions of his contract on which the creditor is entitled to rely. The plaintiff in error is bound to pay his obligation according to its tenor. He cannot deny his own contract merely because his creditor has acquired other rights with which he may satisfy his debt and because he wishes to avail himself of an equitable set-off against the payee of the note. Had plaintiff in error set up any defense to the note, good as to the payee, such as fraud, or failure of consideration, he might, under the law of some jurisdictions, have urged such cases as *McBride* v. *Potter,* 169 Mass. 7, or *Second National Bank* v. *Magee,* 241 S. W. (Texas) 287, or *Van Winkle, etc. Co.* v. *Citizens Bank,* 89 Texas, 147, as a basis for the claim that, because of his special equities, affecting the inception of the note, the defendant in error should exonerate him by resorting to the other collateral, if shown to be sufficient to pay the note.

But plaintiff in error shows only the obligation of his note, presumptively valid both in the hands of the payee and the defendant in error, and claims that since he has an equitable set-off good against the payee of the note, he should be relieved of his own obligation until the collateral of the payee bank has first been applied to its satisfaction. But these circumstances, which do not in any way affect the validity of negotiable paper as such, can afford no foundation for equitable relief to the maker or for depriving the creditor of the full benefit of his security in accordance with his contract. To engraft upon the note the equity here asserted against an innocent holder would be to disregard its terms and impair its negotiability. Such authority as there is rejects it. *Hamsley* v.

*National Park Bank,* 147 Ga. 96; *Hass* v. *Bank of Commerce,* 41 Neb. 754; *Citizens Bank* v. *Giddings,* 84 N. W. (Neb.) 78; *Third National Bank* v. *Harrison,* 10 Fed. 243. And see *Union Bank of Georgetown* v. *Laird,* 2 Wheat. 390; *Myers* v. *Kendall* (La.), 76 So. 801. In any event, the other debtor of defendant in error was not before the court, and for that reason plaintiff was not entitled to the relief sought. *Dorr* v. *Shaw,* 4 Johns, Ch. 17, 18.

There is no error in the record and the judgment of the Circuit Court of Appeals is

*Affirmed.*